# In the United States Court of Federal Claims

No. 17-903C

(E-Filed: March 15, 2019)

| | | |
|---|---|---|
| NORTH AMERICAN LANDSCAPING, CONSTRUCTION AND DREDGE COMPANY, INC., | ) ) ) ) ) | Contract; Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109 (2012); Dredging Contract; Differing Site Condition Claim; Superior Knowledge Claim; Barge Traffic Delay Claim; Severe Weather Delay Claim; Completion Survey Delay Claim; Return of Liquidated Damages Claim; Equitable Adjustment Claim; Re-dredged Quantity Costs Claim; Summary Judgment; RCFC 56. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

Joseph L. Katz, Columbia, MD, for plaintiff.

Daniel B. Volk, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Mark R. Higgins, United States Army Corps of Engineers, Norfolk, VA, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

This matter is before the court on defendant's motion for summary judgment, ECF No. 11, and plaintiff's cross-motion for summary judgment, ECF No. 18, filed pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).  Defendant filed a response/reply brief, ECF No. 21, and plaintiff filed a reply brief, ECF No. 22.  Both parties filed exhibits in support of their motions:  (1) defendant's appendix is found at ECF Nos. 11-2, 12-1, and 12-2; (2) plaintiff's exhibits are found at ECF Nos. 18-1 through 18-4; and, (3) a declaration filed in support of defendant's response/reply brief is found at ECF No. 21-1.

The parties' motions address liability, not damages, deferring any discovery regarding damages until the question of the liability of the government has been addressed by the court. See ECF No. 9 at 2 (joint motion describing the government's motion as a motion for summary judgment, and plaintiff's motion as a "cross-motion for partial summary judgment as to liability"). This matter is fully briefed and ripe for decision. For the reasons set forth below, defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part**, and plaintiff's cross-motion is **DENIED**.

I.   Background[1]

The contract at issue here was awarded after sealed bids were received in response to Solicitation No. W91236-15-B-0009, for maintenance dredging of Hoskins Creek, Tappahannock, VA. ECF No. 12-1 at 68. This procurement was a firm, fixed price contract opportunity set aside for small businesses. Id. at 66, 68, 77. The solicitation was issued by the United States Army Corps of Engineers, Norfolk District (Corps). Id. at 66. The contract, W91236-15-C-0038, was awarded to plaintiff North American Landscaping, Construction and Dredge Company, Inc. (NALCO). ECF No. 1 at 2 (complaint). Several provisions of the solicitation and resulting contract are of relevance to plaintiff's claims.

Most importantly, the contract provisions which discussed boat traffic on the navigable waterway also required the contractor to obstruct the passage of boats and barges as little as possible, and to stop dredging when necessary to allow the passage of such vessels. See ECF No. 12-1 at 330 ("The Contractor shall expect that the [shallow draft fishing vessels, pleasure craft, tugs, grain barges, and various other small crafts] traffic will cause periodic delays and interruptions of his operations."); id. ("The Contractor will be required to conduct the work in such manner as to obstruct navigation as little as possible, and in case the Contractors' plant so obstructs the channel as to make difficult or endanger the passage of vessels, said plant shall be promptly moved on the approach of any vessel to such an extent as may be necessary to afford a practicable passage.").

Further, the solicitation predicted that the project would take less than 30 days to complete. Id. at 74. The contract duration, however, was set at 120 calendar days. Id. at 66, 68. The contract documents signed by NALCO required the work to be completed within 120 days of the issuance of the Notice to Proceed, which in this case was effective on June 4, 2015. Id. at 362, 394. Thus, NALCO was on notice that the deadline for contract completion was set for October 2,

---

[1]   The facts recounted here are taken from the parties' exhibits. The facts supporting the parties' arguments are mostly undisputed, because the parties' briefing focuses primarily on legal disputes, not factual disputes.

2015.  Id. at 394.  The solicitation, and the contract, contained a liquidated damages clause which specified that the contractor would pay the government $300 per day for each day beyond the completion deadline that the contract work was not "completed or accepted."  Id. at 97, 378.

Bidders were encouraged "to visit the site of the work in order to acquaint themselves as to site conditions and other problems incident to the prosecution of the work."  Id. at 71.  At least one bidder visited the site of Hoskins Creek and submitted a question to the Corps about the project based on that site visit.  Id. at 346-47.  NALCO's president avers that he visited the site "several times" before submitting NALCO's bid.  ECF No. 18-1 at 2.  Among the standard contract clauses included in the solicitation was the Site Investigation and Conditions Affecting the Work clause, 48 C.F.R. § 52.236-3 (2017).  ECF No. 12-1 at 88.

When NALCO submitted its bid, there was some hesitation among Corps personnel who were not certain that NALCO was capable of completing the contract work.  See, e.g., id. at 356 ("I do not feel they have answered the [Pre-Award Survey] questions and provided sufficient detail to make a decision as to whether or not they are a responsi[ble] bidder.").  One specific concern was the technology proposed by NALCO:

> In reviewing the capability of [NALCO's proposed] Ellicott dredge 670, it does not appear to have the performance characteristics to complete this work.  Went to the Ellicott Dredges website and found the performance curve for this dredge.  For fine sand, silts, and clays (not clay balls) at 12,000 feet pumping distance, the theoretical production rate from the manufacturer's literature is 100 cubic yards per hour; most efficient pumping rate (no or short distance) is about 600 cubic yards per hour.  At 12,000 feet of pumping distance, they would be operating at a very poor efficiency.
>
> Our project conditions are 13,000 feet AND a static head of 45 feet, outside the parameters of the manufacturer's literature.  I think it is reasonable to ask how the Contractor intends to be successful with these less than marginal conditions.

Id. at 358.

Other concerns were NALCO's ability to perform the contract work within the scheduled timeframe, and whether the final phase of the project would prove to be too challenging for NALCO:

> Still will be monitoring schedule and production very closely, as this seems to be the challenge for them on several others Federal dredging projects.
>
> In particular, I believe the challenge will be those longer dredging pipeline distances when they are working on the outer reach of the project. With that stated, they will likely start at the beginning of the navigation project, pipeline distance will be shortest.

Id. at 360. After meeting with NALCO to gather further information as to NALCO's plan for the contract work, the Corps concluded that NALCO could complete the project:

> I think the meeting went well. NALCO understands the [projects'] requirement . . . , have a plan for working both [upcoming projects], and do not have any other projects ongoing that might have an adverse affect of their performance. They stated they plan to dredged 400 [cubic yards per hour[2]], and will bring in a booster if they fall behind schedule. . . .
>
> I feel comfortable moving forward with the award of Hoskins . . . .

Id. at 360-61; see also ECF No. 1-2 at 2 (noting that the Corps' concerns were resolved, resulting in "an affirmative responsibility determination"). As noted above, the Notice to Proceed was effective on June 4, 2015, and NALCO, pursuant to the contract's terms, was required to complete the project by October 2, 2015.

As detailed in defendant's appendix, NALCO quickly fell behind its proposed dredging schedule. ECF No. 12-1 at 402-04, 411, 414-15. By August 6, 2015, the Corps contemplated sending NALCO a Cure Notice regarding unsatisfactory contract performance. Id. at 415-17. The dredge did not start operations until August 10 or 11, 2015, and its operation was sporadic at first. Id. at 419-23, 426; ECF No. 18-1 at 4.

There were also a number of required contract tasks, and documentation related to those tasks, that were not being completed to the Corps' satisfaction. ECF No. 12-1 at 401, 418, 424-25. Further, the Corps described NALCO's dredging equipment as a hindrance to navigation. Id. at 420, 422-24. The Corps'

---

[2]   Although the passage cited stated "400Cy a day," an email sent ten minutes later corrected that statement to "400 CY per hour, instead of day." ECF No. 12-1 at 360.

4

inspector commented that NALCO's dredging operation showed that NALCO "has little knowledge of how to appropriately operate the dredge." Id. at 423.

On August 20, 2015, the contracting officer (CO) sent a letter to NALCO that pointed out deficiencies in contract performance, with a primary focus on NALCO's failure to make progress on the dredging work; the CO reminded NALCO that an assessment of liquidated damages was likely if the project was not completed by October 2, 2015. Id. at 426-27. On August 25, 2015, NALCO responded to the CO's letter, and pointed out that barge traffic was slowing down the dredging work, but that the dredge would be out of this zone of barge traffic "in a day or two." Id. at 428. Internally, the Corps noted that NALCO's rate of progress was so slow that project completion by the October 2, 2015 deadline was unlikely. Id. at 431-33. The Corps began to consider involving NALCO's surety for the completion of contract work, and also considered a termination for default of the contract. Id. at 433.

The Corps addressed NALCO's performance issues again in September 2015. First, the Corps logged an "unsatisfactory" rating for NALCO's interim contract performance on the Contractor Performance Assessment Reporting System (CPARS) and sent a copy of that evaluation to NALCO on September 14, 2015. Id. at 440-42, 444. Second, the CO sent a formal Cure Notice to NALCO on September 22, 2015, and sent a copy of the letter to NALCO's surety. Id. at 450-51. NALCO responded on September 28, 2015, asserting that barge traffic was causing delays and also was causing the newly-dredged channel to fill back in with material disturbed by the barges. Id. at 452-53. NALCO acknowledged that completion of work by October 2, 2015, was "most likely" not going to occur. Id. at 452.

In mid-September, one of the contracting officials for the Corps shared the following assessment with his colleagues:

> We intend to get the surety involved, as opposed to actually [terminate for default] if possible.
>
> It's hard not to like these guys, they work hard but they have no method, and don't have a plan to recover. Meanwhile their cost of operations will eventually overtake what they are making on this - they are moving very slowly. Barge traffic was maybe one a week. It picks up this week to one a day. Barge traffic is their chief complaint. This shows they simply don't have the skills needed.

Id. at 444.

NALCO, NALCO's counsel, NALCO's surety and the Corps met and conducted a site visit of the project on October 14, 2015.  Id. at 460.  The Corps described the purpose of this meeting as an opportunity for the surety to decide whether to take over the contract with a different contractor, or to keep NALCO in place.  Id.  One of the main concerns of the Corps at this time, and going forward, was that the channel where NALCO had already dredged, in some sections, was not proving to be free of material to the depth required in the contract.  Id.

Late in October, NALCO was still performing contract work, and was meeting milestones established by a revised schedule.  Id. at 462.  The Corps conducted numerous surveys of the channel depth and ordered re-dredging of sections that were not deep enough.  Id. at 437-39, 441, 443, 450, 454-57, 460, 463, 465, 468-71.  As of November 10, 2015, the Corps had not accepted the work as complete, and notified NALCO that liquidated damages would be assessed.  Id. at 472.  Internally, the Corps agreed that re-dredging needed to continue.  Id. at 473-74.  On November 13, 2015, NALCO was directed to continue re-dredging, over NALCO's objections that the channel depth problems occurred through no fault of NALCO.  Id. at 476.

On December 4, 2015, after considerable re-dredging efforts by NALCO, the channel depth was re-surveyed.  Id. at 483-86.  On December 9, 2015, the Corps agreed that the work was essentially complete, and accepted the project work.  Id. at 487-88.  NALCO was assessed $17,700 in liquidated damages for 59 days of performance after October 2, 2015, through November 30, 2015.  Id. at 55; see also ECF No. 1 at 7; ECF No. 11 at 3.

NALCO filed a certified claim with the CO on March 11, 2016.  ECF No. 1-1 at 1-35; ECF No. 12-1 at 6-40.  The claim was for an equitable adjustment of the contract price in the amount of $288,025.97; the claim also included a request for a time extension of 91.85 days for contract performance.  ECF No. 12-1 at 11-12.  The certified claim was denied in its entirety by the CO on July 5, 2016.  ECF No. 1-2 at 1-25; ECF No. 12-1 at 41-65.  The court discusses the elements of NALCO's claim, and the CO's denial of the claim, in the analysis section of this opinion.

II.     Standard of Review on Summary Judgment

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action."  Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotations and citations omitted).  The party moving for summary judgment will prevail "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

6

RCFC 56(a).  A genuine dispute of material fact is one that could "affect the outcome" of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party."  Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted).  With respect to cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citation omitted).

A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249 (citation omitted).  "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law."  Dairyland Power, 16 F.3d at 1202 (citing Celotex, 477 U.S. at 323).

III.   Analysis

    A.   Burden of Proof

The bulk of plaintiff's claim for an equitable adjustment of the contract price is founded, directly or indirectly, on two types of excusable delay.  ECF No. 1-1 at 3-11.  In such circumstances, "the contractor has the burden of proving the extent of the delay, that the delay was proximately caused by government action, and that the delay harmed the contractor."  Wilner v. United States, 24 F.3d 1397, 1401 (Fed. Cir. 1994).

Another separate and distinct portion of plaintiff's claim depends, again, on excusable delay, where plaintiff seeks the return of assessed liquidated damages.  ECF No. 1-1 at 11.  To recover on this portion of the claim, which relies on three types of excusable delay, id. at 6, plaintiff again bears the burden of proof.  See Sauer Inc. v. Danzig, 224 F.3d 1340, 1347 (Fed. Cir. 2000) ("As a general rule, a party asserting that liquidated damages were improperly assessed bears the burden of showing the extent of the excusable delay to which it is entitled.") (citations omitted).

The only portion of plaintiff's claim that is not related to excusable delay is the equitable adjustment sought for a cost item labeled "Re-dredged Quantity," ECF No. 18 at 10, which also is referred to as the "uncredited dredge quantity [of] 6391 cubic yards," ECF No. 1-1 at 10. Here, too, plaintiff bears the burden of proof. See Servidone Constr. Corp. v. United States, 931 F.2d 860, 861 (Fed. Cir. 1991) ("To receive an equitable adjustment from the Government, a contractor must show three necessary elements--liability, causation, and resultant injury.") (citation omitted).

B.  Delay Claim for Tug and Barge Traffic

In the largest of plaintiff's delay claims, NALCO asserts that tug and barge traffic (hereinafter, barge traffic) caused an excusable delay of 57.25 days past the contract completion date of October 2, 2015. ECF No. 1 at 6. In its communications with the Corps on this topic, the justification for this excusable delay was first described as "inter alia, a changed condition, a differing site condition, [and] a deficient specification." ECF No. 1-1 at 14. To these theories of entitlement NALCO later added a reference to the "superior knowledge doctrine." Id. at 4. The barge traffic delay claim was denied in its entirety by the CO. ECF No. 1 at 10.

Plaintiff's first three theories of entitlement to excusable delay rest on the premise that the solicitation was inaccurate and misleading as to the frequency of barge traffic. ECF No. 1-1 at 3-4. The "superior knowledge" theory presented by plaintiff is somewhat similar, in that plaintiff contends that the solicitation was misleading or deficient as to barge traffic information, but with this theory plaintiff contends, in addition, that the Corps had a duty to disclose its superior knowledge of barge traffic. Id. at 5. None of plaintiff's theories of entitlement to excusable delay has merit.

The court notes, at the outset, that plaintiff's motion for summary judgment relies principally on a Type I Differing Site Condition theory, ECF No. 18 at 17-20, with a secondary emphasis on the superior knowledge doctrine, id. at 20-21. The court therefore will not discuss in this opinion any defective specifications theory of entitlement, which was raised only in one sentence of plaintiff's reply brief, see ECF No. 22 at 2, unsupported by any reference to the elements needed to prove a defective specifications claim.[3] Nor will the court

---

[3]   Any defective specification theory would fail as a matter of law for the same reasons that plaintiff's differing site condition theory cannot prevail. See infra. Moreover, as the United States Court of Appeals for the Federal Circuit has held, defective specifications claims are not distinct claims when the only alleged

8

discuss "changed conditions" or "constructive change" theories of entitlement, since no authority was cited by plaintiff to support the cursory invocations of these doctrines in plaintiff's motion.[4] See ECF No. 18 at 1, 12, 21.  The only other legal theories addressed at any length by plaintiff to support its barge traffic delay claim are the linked concepts of patent ambiguities, latent ambiguities, and the principle of contra proferentem.  Id. at 12-16.

For its analysis, the court first addresses plaintiff's Type I Differing Site Condition delay claim, ECF No. 18 at 19, and, in this context, also discusses plaintiff's assertions as to alleged ambiguities in the solicitation, id. at 13.  The court then turns to plaintiff's reliance on the doctrine of superior knowledge.  Id. at 20.  As a threshold matter, however, the court begins with a review of the solicitation language that underlies NALCO's barge traffic delay claim.

The solicitation and contract address barge traffic, and the topic of performance delays that a contractor might experience as a result of such traffic.  First, the contract discussed the relationship between traffic on Hoskins Creek and the dredging work:

> Obstruction of Channel
>
> The Government will not undertake to keep the area of channels free from vessels or other obstructions, except to the extent of such regulations, if any, as may be prescribed by the Secretary of the Army, in accordance with the provisions of Section 7 of the River and Harbor Act, approved 3 August 1917.  The Contractor will be required to conduct the work in such manner as to obstruct navigation as little as possible, and in case the Contractors' plant so obstructs the channel as to make difficult or endanger the passage of vessels, said plant shall be promptly moved on the approach of any vessel to such an extent as may be necessary to afford a practicable passage.  Upon the completion of the work, the Contractor shall promptly remove his plant, including ranges, buoys, piles, and other marks placed by him under this contract in navigable water or on shore.

---

defect is the failure to disclose a differing site condition.  Comtrol, Inc. v. United States, 294 F.3d 1357, 1362 (Fed. Cir. 2002).

[4]   The court has considered all of plaintiff's arguments that attempt to justify its barge traffic delay claim for 57.25 days of excusable delay, and associated extended performance costs, but finds that this claim fails as a matter of law.

ECF No. 12-1 at 330. According to this provision, two directives are clear and unambiguous. NALCO was required to set up its dredging operation to "obstruct navigation as little as possible." Id. In addition, NALCO would be required to move its equipment aside "to such an extent as may be necessary to afford a practicable passage" to traffic on Hoskins Creek. Id.

The second relevant contract provision specifically addresses traffic on Hoskins Creek:

> Channel Traffic
>
> The vessel traffic to be encountered during dredging and placement operations will usually include shallow draft fishing vessels, pleasure craft, tugs, grain barges, and various other small crafts. The Contractor shall expect that the traffic will cause periodic delays and interruptions of his operations.

Id. Thus, NALCO was given a description of the vessels "usually" encountered on Hoskins Creek, including tugs and grain barges, and was informed that such traffic would cause "periodic delays and interruptions" of dredging operations. Id.

        1.      No Differing Site Condition as to Channel Traffic or Periodic Delays, and No Ambiguity in These Contract Terms

Plaintiff argues either that the term "periodic delays" has a different meaning than the site condition NALCO encountered on Hoskins Creek, or that the term "periodic delays" is ambiguous and must be construed against the drafter of the contract. Neither of these arguments is supported by the contract language or the undisputed facts in the record before the court. To summarize plaintiff's differing site condition claim, plaintiff asserts, first, that barge traffic occurred daily, or near-daily, during certain periods of contract performance. ECF No. 1 at 4; ECF No. 18 at 6, 12. According to plaintiff, the solicitation represented that any dredging delays related to barge traffic would be much less frequent than those caused by daily, or near-daily, barge traffic. ECF No. 18 at 6, 19.

There are significant flaws in plaintiff's differing site condition claim. First, plaintiff conflates the frequency of barge traffic with the frequency of delays related to barge traffic, and merges these two concepts when plaintiff construes the meaning of the contract term "periodic." See, e.g., ECF No. 18 at 19, 21 (contrasting the solicitation term "periodic delays" with descriptions of the alleged differing site condition, such as "daily and near-daily [dredging] delays," "frequency of channel traffic," "frequency of barge traffic," "daily/near-daily grain barge traffic," and "daily barge traffic").

ECF No. 12-1 at 330. According to this provision, two directives are clear and unambiguous. NALCO was required to set up its dredging operation to "obstruct navigation as little as possible." Id. In addition, NALCO would be required to move its equipment aside "to such an extent as may be necessary to afford a practicable passage" to traffic on Hoskins Creek. Id.

The second relevant contract provision specifically addresses traffic on Hoskins Creek:

> Channel Traffic
>
> The vessel traffic to be encountered during dredging and placement operations will usually include shallow draft fishing vessels, pleasure craft, tugs, grain barges, and various other small crafts. The Contractor shall expect that the traffic will cause periodic delays and interruptions of his operations.

Id. Thus, NALCO was given a description of the vessels "usually" encountered on Hoskins Creek, including tugs and grain barges, and was informed that such traffic would cause "periodic delays and interruptions" of dredging operations. Id.

    1.    No Differing Site Condition as to Channel Traffic or Periodic Delays, and No Ambiguity in These Contract Terms

Plaintiff argues either that the term "periodic delays" has a different meaning than the site condition NALCO encountered on Hoskins Creek, or that the term "periodic delays" is ambiguous and must be construed against the drafter of the contract. Neither of these arguments is supported by the contract language or the undisputed facts in the record before the court. To summarize plaintiff's differing site condition claim, plaintiff asserts, first, that barge traffic occurred daily, or near-daily, during certain periods of contract performance. ECF No. 1 at 4; ECF No. 18 at 6, 12. According to plaintiff, the solicitation represented that any dredging delays related to barge traffic would be much less frequent than those caused by daily, or near-daily, barge traffic. ECF No. 18 at 6, 19.

There are significant flaws in plaintiff's differing site condition claim. First, plaintiff conflates the frequency of barge traffic with the frequency of delays related to barge traffic, and merges these two concepts when plaintiff construes the meaning of the contract term "periodic." See, e.g., ECF No. 18 at 19, 21 (contrasting the solicitation term "periodic delays" with descriptions of the alleged differing site condition, such as "daily and near-daily [dredging] delays," "frequency of channel traffic," "frequency of barge traffic," "daily/near-daily grain barge traffic," and "daily barge traffic").

The frequency of barge traffic, and the frequency of delays related to barge traffic, are distinct concepts, as defendant points out:

> NALCO reads the contract as having "indicat[ed] that . . . barge traffic would . . . be 'periodic,'" [ECF No. 18 at 21], but that is not what the contract says. "Periodic" referred not to the passage of vessels, but rather to "delays and interruptions of [the contractor's] operations." [ECF No. 12-1 at 330]. The Corps was in no position to specify the extent to which vessel traffic would actually delay a contractor's operations because that is dependent on the contractor's chosen means and methods. See, e.g., [ECF No. 12-2 at 351-53].

ECF No. 21 at 3. To the extent that defendant's commentary is based on the plain text of the solicitation, the court agrees. The only use of the term periodic in the Channel Traffic provision of the contract is to describe "delays and interruptions," not the occurrence of barge traffic itself.

Further, even if there were a rough equivalence between barge traffic and dredging delays caused by barge traffic, the contract language does not specify the frequency of barge traffic. The term periodic does not mean infrequent, and does not represent that barge traffic will occur less frequently than daily, or near-daily, when the contract work is being performed. Because the contract does not contain a representation as to the frequency of barge traffic, there can be no successful differing site condition claim based on daily, or near-daily, barge traffic, or the delays caused by daily, or near-daily, barge traffic.[5] Plaintiff's argument that the Corps "made a representation of the frequency of barge traffic," ECF No. 18 at 19, is simply not supported by the contract language.

To prevail on a Type I Differing Site Condition claim, a contractor must prove "that the conditions indicated in the contract differ materially from those it encounters during performance." Randa/Madison Joint Venture III v. Dahlberg, 239 F.3d 1264, 1274 (Fed. Cir. 2001) (citation and internal quotations omitted). None of the barge traffic or dredging delays related to barge traffic conditions

---

[5] Although plaintiff attempts to buttress its differing site condition argument by referencing the use of the word "periodic" in other provisions set forth in the contract, the court finds no persuasiveness in this argument. ECF No. 18 at 7-8, 16-17. Periodic is an adjective that can vary widely with context – periodic, by itself, does not specify temporal frequency. See ECF No. 11 at 4 (stating that "the word 'periodic' does not create a representation as to frequency" (citing ECF No. 12-1 at 56)).

indicated in the contract are specific enough to indicate that the conditions encountered by NALCO are materially different from those indicated in the contract. According all favorable inferences to plaintiff's assertions as to the frequency of barge traffic and delays caused by barge traffic, plaintiff's differing site condition claim fails as a matter of law.

The court turns now to plaintiff's contentions that the term "periodic delays" is inherently ambiguous, that the ambiguity in this term is latent, and, thus, that the court must apply the doctrine of contra proferentem against the Corps in its interpretation of this contract term. ECF No. 18 at 12-16. Unfortunately for plaintiff, the court agrees with defendant that "there is no ambiguity to resolve[,] . . . [because] NALCO is simply interpreting the contract in a manner that reads a representation regarding barge passage frequency into contract language that lacks any such representation." ECF No. 21 at 2-3. Plaintiff's reliance on the doctrine of contra proferentem has no merit where there is no ambiguity in the relevant contract term. Plaintiff's barge traffic delay claim cannot be salvaged by the doctrine of contra proferentem, which is inapplicable to this contract provision.

Finally, NALCO argues that its reasonable interpretation of the Channel Traffic provision, and its reliance on that interpretation in formulating its work plan and bid, demonstrate the validity of NALCO's barge traffic delay claim. ECF No. 18 at 8, 17; ECF No. 22 at 3. However, the court finds that NALCO's interpretation of that contract provision is a subjective interpretation, not an objective interpretation, of an unambiguous contract term. NALCO's subjective interpretation of the contract, that barge traffic and delays caused by barge traffic would likely occur "to the tune of approximately once a week," ECF No. 22 at 3, does not determine the rights of the parties to this contract. "Where a contract is not ambiguous, the wording of the contract controls its meaning and resort cannot be had to extraneous circumstances or subjective interpretations to determine such meaning." Perry & Wallis, Inc. v. United States, 427 F.2d 722, 725 (Ct. Cl. 1970) (citing Duhame v. United States, 119 F. Supp. 192, 195 (Ct. Cl. 1954)). Here, the contract made no representation as to the frequency of barge traffic, or the frequency of delays caused by barge traffic, and was unambiguous in this regard. For these reasons, plaintiff's differing site condition claim as to barge traffic delays fails as a matter of law.

2.   Superior Knowledge Doctrine

There is no real dispute that the Corps possessed superior knowledge, compared to NALCO, of the barge traffic on Hoskins Creek. The dispute here is whether the Corps "misled NALCO into estimating a once weekly delay on account of passing barge traffic, and not a daily or near-daily occurrence," so as to support a breach of contract claim based on the doctrine of superior knowledge.

12

ECF No. 22 at 4.  The authorities cited by the parties and the evidence of record show that the contract language in this instance was not misleading, that the Corps did not breach an implied duty to reveal vital information, and that plaintiff's superior knowledge theory of entitlement to 57.25 days of excusable delay is without merit as a matter of law.

"The superior knowledge doctrine imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance." Giesler v. United States, 232 F.3d 864, 876 (Fed. Cir. 2000).  Four elements of proof are required to obtain relief on such a contract claim:

> (1) a contractor undertook to perform without vital knowledge of a fact that affects performance costs or duration; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor or did not put it on notice to inquire; and (4) the government failed to provide the relevant information.

Id. (citing Hercules Inc. v. United States, 24 F.3d 188, 196 (Fed. Cir. 1994)).  The record before the court could possibly support the first and fourth elements noted in Giesler.  According all favorable inferences to NALCO, it does appear that NALCO was not aware of the frequency of barge traffic on Hoskins Creek, and the Corps does not appear to have provided this information to NALCO before the contract was signed.

The second and third elements cited in Giesler, however, are not satisfied in this case.  Plaintiff has made no showing that the Corps was aware that NALCO was unaware of the frequency of barge traffic on Hoskins Creek.[6]  Because plaintiff bears the burden of proof to establish its barge traffic delay claim, its failure to adduce any evidence on the second element of proof is fatal to its superior knowledge claim.

---

[6] The summary judgment brief filed by plaintiff does not point to any evidence that would satisfy this element of a superior knowledge claim.  The declaration of NALCO's president also does not address this topic.  See ECF No. 18-1.  The complaint contains a conclusory assertion that addresses the second element of proof for a superior knowledge claim, ECF No. 1 at 6, but a bare assertion of this nature is not sufficient to defeat the government's motion for summary judgment.  See, e.g., Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984) (stating that "[m]ere denials or conclusory statements are insufficient" to defeat a motion for summary judgment).

13

More importantly, barge traffic, and periodic performance delays due to channel traffic, were noted in the solicitation. ECF No. 12-1 at 330. Further, NALCO was on notice that it had a duty to inquire as to the conditions of performance, and NALCO was expressly invited by the solicitation to investigate the conditions at Hoskins Creek. Id. at 71, 88. In addition, there was no misleading representation in the solicitation regarding the frequency of barge traffic, or the frequency of delays likely to be caused by barge traffic. Id. at 330. In light of these undisputed facts, plaintiff cannot satisfy the third element of proof to establish a superior knowledge claim for breach of contract. Because the solicitation provisions did not mislead NALCO, and because the solicitation put NALCO on notice to inquire as to conditions of performance, plaintiff cannot, as a matter of law, establish a breach of contract claim under the superior knowledge doctrine.

For all of the above reasons, plaintiff's barge traffic delay claim, asserting 57.25 days of excusable delay, fails as a matter of law. No reduction in liquidated damages is due plaintiff for barge traffic delays. Nor are any equitable adjustments of the contract price related to delays attributed to barge traffic due plaintiff, as a matter of law. Defendant's motion for summary judgment is granted as to these portions of plaintiff's claim.

        C.        Delay Claim (Time Extension Only) for Unusually Severe Weather

Plaintiff's weather-related time extension request, for 22.6 days past the contract completion date of October 2, 2015, was denied in its entirety by the CO. ECF No. 1 at 6, 10. The contract incorporated a clause, Federal Acquisition Regulation (FAR) 52.249-10, 48 C.F.R. § 52.249-10 (2017) (Default (Fixed-Price Construction)), among its standard contract clauses. ECF No. 12-1 at 89. That FAR provision requires that claims for time extensions due to "unusually severe weather" be submitted within 10 days of the weather event; otherwise, the excusable delay request will be inoperative to reduce the liquidated damages charged the contractor. See FAR 52.249-10(b) (stating that the contractor will not be charged liquidated damages if the "Contractor, within 10 days from the beginning of any delay (unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay"). It is undisputed that NALCO's weather-related delay claim was presented to the CO on March 16, 2016, and that liquidated damages were charged for the period of time from October 3, 2015, through November 30, 2015. ECF No. 12-1 at 6, 11, 55; see also ECF No. 1 at 7; ECF No. 11 at 3.

Plaintiff's certified claim does not, at least in its narrative, specify the actual days of unusually severe weather that justified the 22.6 days of excusable delay requested. ECF No. 1-1 at 6. The CO found that the records submitted by

14

NALCO were insufficient to support the claim, particularly when these records were compared with weather records for times the dredge was operating. ECF No. 1-2 at 20. More importantly, however, the CO concluded that the claim was time-barred, because it was submitted 100 days after work was completed, not within ten days of the beginning of any weather event. Id.

In defendant's motion for summary judgment, the government argues that plaintiff's request for a time extension founded on unusually severe weather is foreclosed, as untimely, pursuant to FAR 52.249-10(b)(2). ECF No. 11 at 6. Plaintiff's cross-motion and reply brief do not address defendant's argument founded on FAR 52.249-10. The court concludes that plaintiff's weather-related excusable delay claim is time-barred. See, e.g., R.P. Wallace, Inc. v. United States, 63 Fed. Cl. 402, 417 (2004) (stating that "plaintiff's failure to provide proper notice as to the delays being encountered in fabricating and installing the windows provides a second, independent basis upon which to deny any further excusable delay for these phases of the project" (citing Decker & Co. v. West, 76 F.3d 1573, 1581 (Fed. Cir. 1996); FAR 52.249-10)).

No reduction in liquidated damages is due plaintiff for unusually severe weather, as a matter of law. Defendant's motion for summary judgment is granted as to this portion of plaintiff's claim.

D.   Delay Claim for Timing of Government Survey of Completed Work

Plaintiff's "survey delay" time extension request, for 12 days past the contract completion date of October 2, 2015, was denied in its entirety by the CO. ECF No. 1 at 6, 10. As argued in NALCO's certified claim,

> NALCO remained on standby from the period of November 3 through November 14, 2015, awaiting further direction from the Corps as to the completion of the Project. Accordingly, NALCO respectfully requests a further time extension of twelve (12) days on account of the said survey delays.

ECF No. 1-1 at 6 (footnote omitted). The CO's decision examined the contract provisions relevant to the timing of the completion survey and found no fault of the government in the timing of the survey. ECF No. 1-2 at 20-21.

As the government explains in its motion for summary judgment, NALCO failed to provide the minimum 14 days advance notice between its request for a completion survey and the proposed date for the completion of work (and the date for the government's completion survey). ECF No. 11 at 6-7. The undisputed facts show that the survey was performed within the 14-day period provided by

the contract.  Id. at 7; see also ECF No. 1-2 at 20-21 (noting that both the completion of the survey work, and the delivery of the survey to NALCO, occurred within the 14-day time frame).  Plaintiff's cross-motion and reply brief do not address defendant's argument founded on the contract provisions governing the completion survey.

Plaintiff has failed to establish a genuine dispute of material fact as to the timeliness of the completion survey.  No reduction in liquidated damages is due plaintiff for delays in the survey of completed dredging work, as a matter of law.  Nor are any equitable adjustments of the contract price for delays attributed to the surveying of contract work due plaintiff, as a matter of law.  Defendant's motion for summary judgment is granted as to these portions of plaintiff's claim.

      E.      Re-dredged Quantity Costs Claim

Plaintiff seeks $19,173 for the quantity of material removed from the channel before the Corps directed NALCO to re-dredge certain portions of Hoskins Creek.  ECF No. 18 at 9.  According to plaintiff, NALCO was not credited with 6391 cubic yards of dredged material that should have been paid at $3 per cubic yard.  Id.  The factual basis for the claim is that depths of the channel that were cleared, by the first pass of the dredge, were allegedly filled in later by the passage of tugs and barges.  Id.; see also ECF No. 18-1 at 6-7.

Defendant disputes the facts underlying plaintiff's re-dredged quantity claim.  ECF No. 11 at 8; ECF No. 21 at 9.  Plaintiff counters that there is at least a genuine dispute of material fact as to this claim.  ECF No. 18 at 21; ECF No. 22 at 4.  Viewing the evidence in the light most favorable to NALCO, and according all reasonable factual inferences to NALCO, a genuine dispute of material fact exists as to defendant's liability for this claim.  Dairyland Power, 16 F.3d at 1202.  Similarly, viewing the evidence in the light most favorable to defendant, a genuine dispute of material fact exists as to the government's liability for this claim.  Thus, plaintiff's re-dredged quantity costs claim is the only claim in this suit that survives the court's resolution of the parties' motions for summary judgment.

IV.    Conclusion

Having considered the undisputed facts and all of the parties' arguments, the court concludes that plaintiff has failed to meet its burden to show the government's liability for any of its excusable delay-related claims, either for the return of liquidated damages, or for equitable adjustments to the contract price.  Plaintiff has also failed to show the government's liability, as a matter of law, for its re-dredged quantity costs claim.  The government has shown that it is entitled to summary judgment on the majority of plaintiff's claims, including the entirety

16

of the return of liquidated damages claim, and most of plaintiff's equitable adjustment claims. However, a genuine dispute of material fact prevents defendant from receiving summary judgment on the portion of plaintiff's equitable adjustment claim, in the amount of $19,173, for re-dredged quantity costs.

      Accordingly, defendant's motion for summary judgment as to liability, ECF No. 11, is **DENIED in part**, as to the portion of plaintiff's equitable adjustment claim, in the amount of $19,173, for re-dredged quantity costs, and **GRANTED in part**, as to all other components of plaintiff's claim before this court. Plaintiff's motion for summary judgment as to liability, ECF No. 18, is **DENIED**. Because the remaining claim in dispute in this suit is relatively small in monetary value, the parties are urged to consider alternative dispute resolution (ADR), or other means of settlement. On or before **April 12, 2019**, the parties are directed to **FILE** a **joint status report** proposing the next steps in this litigation.

      IT IS SO ORDERED.

                                s/Patricia E. Campbell-Smith
                                PATRICIA E. CAMPBELL-SMITH
                                Judge