**Corrected**

# In the United States Court of Federal Claims

No. 17-903C

(E-Filed: April 30, 2020)

|  |  |
|---|---|
| NORTH AMERICAN LANDSCAPING, CONSTRUCTION AND DREDGE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Summary Judgment; RCFC 56; Contract Interpretation. |

Joseph L. Katz, Bethesda, MD, for plaintiff.

Daniel B. Volk, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Mark R. Higgins, United States Army Corps of Engineers, Norfolk, VA, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

      This matter is before the court on defendant's second motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), ECF No. 30, and plaintiff's cross-motion for summary judgment, ECF No. 36. Defendant filed a response/reply brief, ECF No. 37, and plaintiff filed a reply, ECF No. 39. The parties also relied on, and therefore the court also considered, the appendix filed in support of defendant's first motion for summary judgment, ECF No. 12-1. This matter is fully briefed and ripe for decision. For the reasons set forth below, defendant's second motion for summary judgment is **GRANTED**, and plaintiff's cross-motion is **DENIED**.

I.     Background

This case arises out of a contract between plaintiff and the United States Army Corps of Engineers for maintenance dredging of a creek in Virginia.[1]  See ECF No. 30 at 2.  Plaintiff was to be paid for the dredging work according to the quantity of material removed from the creek bed, which was to be determined from analyzing survey data.  See id.; see also ECF No. 12-1 at 129.  The contract terms provide that the amount of material to be paid for would be:

> measured by the cubic yard in place by computing the volume between the bottom surface shown by soundings of the last surveys made before dredging, and the bottom surface shown by the soundings of surveys made as soon as practicable after the work has been completed.

ECF No. 12-1 at 129.  The contract further provides that the contractor's unit price for each cubic yard of material would "include his evaluation of shoaling, other natural changes in the waterway, or changes caused by the Contractor's operations that might occur during the period between the surveys before dredging and the surveys for acceptance of the work."  Id. at 130.

The contract also provided a process for defendant to accept the work and finalize the calculation of material removed.  See id. at 329.  Fourteen days prior to completion of the work, plaintiff was to request an "After Dredging Survey" from the contracting officer "to ensure prompt performance of the after dredging acceptance surveys."  Id.  If the after-dredging acceptance survey discovered "any shoals, lumps, or other lack of contract depth, . . . the Contractor [would] be required to remove [the] same by dredging at the contract rate for dredging."  Id.  The government was to fund the full cost of the survey unless more than two were required "by reason of work for the removal of shoals disclosed at a prior sounding."  Id.

The contemplated before-dredging survey was completed on July 13, 2015, and partial progress surveys were performed on September 2, 2015, and October 6, 2015.  See ECF No. 30 at 3; ECF No. 36 at 3.  Defendant then completed an after-dredging survey in November 2015 and found that some areas "lack[ed] contract depth," requiring further dredging as anticipated by the contract.  See ECF No. 12-1 at 329; ECF No. 30 at 3.  The work had not been finalized and accepted by defendant at the time of the first after-dredging survey.[2]  See ECF No. 12-1 at 465.  Plaintiff completed the additional work,

---

[1]     The court previously set forth the factual details and procedural history of this case in its first summary judgment opinion, ECF No. 23.  The court will only address the facts relevant to defendant's current motion.

[2]     Plaintiff states in its motion that it was "required to re-dredge previously dredged, approved, and paid for areas." ECF No. 36 at 6.  Assuming plaintiff is referring to the areas that

and defendant performed another after-dredging survey on December 4, 2015, at which point the work was accepted. See ECF No. 30 at 3; ECF No. 36 at 5; ECF No. 12-1 at 487.

Defendant then compared the before-dredging survey from July 2015 and the after-dredging survey from December 2015, determined that plaintiff had removed 46,065 cubic yards of material, and paid plaintiff the contractual unit price for that amount of material. See ECF No. 30 at 3. Plaintiff contends that it was underpaid because defendant's method of calculating the amount of removed material was flawed. See ECF No. 36 at 3-4.

Plaintiff filed a certified claim with the agency, which was denied, and then filed its complaint in this court. See ECF No. 1. In the cross-motions for summary judgment previously addressed by the court, defendant's motion was granted as to all of plaintiff's claims except its claim regarding payment for re-dredging—which is the subject of the current motions. See ECF No. 23. Plaintiff's motion was denied in its entirety. See id.

## II.     Legal Standards

According to RCFC 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted). A genuine dispute of material fact is one that could "affect the outcome" of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The parties in this case agree as to the material facts and dispute only the application of the terms of the contract.

Contract interpretation is "'generally amenable to summary judgment'" because it involves questions of law. West Bay Builders, Inc. v. United States, 85 Fed. Cl. 1, 13-14 (2008) (quoting Varilease Tech. Grp., Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002)). "When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." Lynch v. United States, 292 U.S. 571, 579 (1934). The court therefore applies general principles of contract law when reviewing and interpreting contracts between the United States and a private party. See Franconia Assoc. v. United States, 536 U.S. 129, 141 (2002).

---

were the subjects of the interim surveys as those areas that were "approved," the court notes that plaintiff was required to re-dredge after each survey because it had failed to meet contract specifications. See ECF No. 12-1 at 460. The court finds that plaintiff's assertion—that its work had been approved—is insufficient to create any genuine dispute of material fact on this point.

3

III.   Analysis

In its briefing, defendant argues that the plain language of the contract supports its before- and after-dredging comparison and payment, and any potential re-dredging was to be accounted for in the contractor's unit price.  See ECF No. 30 at 4-5; ECF No. 37 at 2.  Plaintiff, on the other hand, contends that the contract language supports its view that defendant should have calculated the amount of material removed from the creek by using the interim surveys to include the amount of material that was redeposited and that had to be re-dredged.  See ECF No. 36 at 4-5.

Contract interpretation begins with the plain language of the contract, which must be "'given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances.'"  West Bay Builders, 85 Fed. Cl. at 14 (quoting Metric Constructors, Inc. v. NASA, 169 F.3d 747, 752 (Fed. Cir. 1999)).  The contract must be read as a whole and interpreted to "harmonize and give reasonable meaning to all of its parts."  Id. (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)).

When a contract term is clear on its face, the court gives the term its plain and ordinary meaning and may not assign another meaning, "'no matter how reasonable that other meaning might seem to be.'"  Id. (quoting Triax Pac, Inc. v. West, 130 F.3d 1469, 1473 (Fed. Cir. 1997)).  Thus, "the ordinary meaning of the contractual provisions govern[s], and not a party's subjective but unexpressed intent."  Premier Office Complex of Parma, LLC v. United States, 134 Fed. Cl. 83, 88 (2017) (citing Andersen Consulting v. United States, 959 F.2d 929, 934 (Fed. Cir. 1992)).  If, however, a contract term is ambiguous—susceptible to more than one reasonable meaning—then "disputed issues of fact may arise concerning the parties' intent."  West Bay Builders, 85 Fed. Cl. at 15 (citation omitted).

Defendant argues that the contract requires that the agency base plaintiff's dredging payment on before- and after-dredging surveys.  See ECF No. 30 at 2-3.  Citing contract section 01 22 00, Measurement and Payment, defendant argues that the language is clear that the amount of material to be paid for will be computed by comparing "the volume between the bottom surface shown by soundings of the last surveys made before dredging and . . . the soundings of surveys made as soon as practicable after the work has been completed."  Id.; see also ECF No. 12-1 at 129.

Plaintiff responds that the contract language provides for "surveys," plural, and "[t]he obvious interpretation of payment based off of multiple surveys is payment for the work done from survey to survey, in the aggregate."  ECF No. 36 at 3.  Thus, plaintiff argues, when the first after-dredging survey showed that "additional shoal had become deposited within a previously dredged area" and required re-dredging, the material that plaintiff removed in the re-dredging effort should have been included in the final tally of material for payment.  Id. at 4-5.  Plaintiff further contends that the directive to re-dredge

4

constituted a "constructive change order" for which it was entitled to "prosecute a claim for equitable adjustment." Id. at 6.

Defendant replies that, despite the use of the plural, "surveys," and "[r]egardless of how many surveys may be conducted to establish the before- and after-dredging conditions . . . the contract language makes clear that the payable quantity is to be determined based on a comparison of before- and after-dredging survey data." ECF No. 37 at 2-3. Defendant further contends that, even if interim shoaling requiring re-dredging did occur, that possibility was contemplated by the contract and plaintiff was instructed to include the possibility in its pricing. See id. at 4 ("[T]he contract specifications expressly required [plaintiff] to factor the possibility of re-shoaling into its unit price."); see also ECF No. 12-1 at 130 ("The Contractor's unit price for dredging . . . shall include his evaluation of shoaling, other natural changes in the waterway, or changes caused by the Contractor's operations that might occur during the period between the surveys before dredging and the surveys for acceptance of the work."). Defendant therefore concludes that there is "no basis under the terms of the contract for [plaintiff] to recover any further payment for dredging." Id. at 5.

The court agrees with defendant; the plain language of the contract makes clear that payment to plaintiff for dredging was to be based on the amount of material removed during dredging as determined by comparing before- and after-dredging survey data. Paragraph 1.4.1 of section 01 22 00 of the contract, called "Payment Item No. 0003 DREDGING" clearly states that the volume for payment would be calculated by comparing "the volume between the bottom surface shown by soundings of the last surveys made before dredging and . . . the soundings of surveys made as soon as practicable after the work has been completed." See ECF No. 12-1 at 129 (emphasis added). Plaintiff's suggestion that the use of the plural, "surveys," somehow indicates that the volume was to be calculated by aggregating all survey data taken is directly contradicted by the language of the contract. The "ordinary meaning of the contractual provisions" must govern, not the "subjective but unexpressed intent" of plaintiff. Premier Office, 134 Fed. Cl. at 88 (citation omitted).

The contract's instruction that plaintiff include the possibility of changes to the waterway during work in its pricing supports the volume calculation language. As does the procedure for finalizing the contract and accepting the work—the contract expressly contemplated the possible need for re-dredging after completion of an after-dredging survey if plaintiff failed to achieve proper contract depth. See ECF No. 12-1 at 329. In the court's view, the calculation of material removed was to be based on comparison of the before-dredging survey with the after-dredging survey that resulted in acceptance of the work. Id. at 129-30. Thus, defendant's second motion for summary judgment must be granted, and plaintiff's cross-motion for summary judgment must be denied.

IV.    Conclusion

Accordingly,

(1)    Defendant's second motion for summary judgment, ECF No. 30, is **GRANTED**, and plaintiff's cross-motion for summary judgment, ECF No. 36, is **DENIED**;

(2)    Pursuant to the court's March 15, 2019 opinion, ECF No. 23, and this opinion, the clerk's office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** with prejudice plaintiff's complaint; and

(3)    Each party shall bear its own costs.

IT IS SO ORDERED.

                                                                             s/Patricia E. Campbell-Smith
                                                                             PATRICIA E. CAMPBELL-SMITH
                                                                             Judge